**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CAROL ABRAMSON, IRA ABRAMSON,**

        **Plaintiffs,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　**Case No. 6:04-cv-54-Orl-31DAB**

**WALT DISNEY WORLD COMPANY,**
**WALT DISNEY WORLD HOSPITALITY**
**AND RECREATION CORPORATION,**

        **Defendants.**
_____/

## ORDER

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**　**MOTION TO STRIKE PLAINTIFF'S EXPERT (Doc. No. 91)**
>
> **FILED:**　　**May 2, 2005**
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED**.

Plaintiffs sue in this trip and fall action, alleging negligence in the design and maintenance of a railing at the Dinosaur exhibit at Disney's Animal Kingdom Theme Park. Specifically, Plaintiffs allege: "[T]he railings in the indoor waiting area for the Dinosaur Attraction were supported by posts whose bottoms form rectangular baseplates bolted to the floor. The baseplate portion of the post runs perpendicular to the railings, and such baseplates extend out into the walkway beyond the distance of the railing, and are raised to a height above the level of the floor." (Doc. No. 53, paragraph 45).

On November 5, 2001, Plaintiff Carol Abramson allegedly "tripped over the protruding baseplate/post that was supporting a railing at the Dinosaur Attraction, and which extended into the walkway" and was injured. *Id.* at paragraph 46.  Plaintiffs assert that the baseplates, posts and rails were defectively designed, installed and maintained and, coupled with inadequate lighting, constituted a danger to the public.

In support of this theory, Plaintiffs tender Herbert T. Bogert as a "safety consultant" expert. According to his report (Doc. No. 84), Defendant created a hazard by placing sharp edged support flanges above ground level in a dimly lit area.  His report includes pictures of the allegedly dangerous condition (Doc. 84, attachment number 3).

Defendant moves to strike the designation of Mr. Bogert as an expert, and prohibit his testimony.  As grounds, Defendant asserts that Bogert is not qualified to be an expert; the methodology he used to support his conclusions is not sufficiently reliable; and that expert testimony is unnecessary in this case in that the facts at issue are well within the common experience of jurors and are not beyond the understanding of a lay person (Doc. No. 91).  Plaintiffs have filed a three and a half page response (Doc. No. 94), and contend that, as Defendant has not yet deposed Bogert, the motion should be denied; Bogert is qualified, and has been accepted by the state court as so qualified in a similar case against the same Defendant; Bogert's methodology is sound; and the trier of fact will benefit from Mr. Bogert's testimony and opinions.  Because the Court finds that the matters at issue are indeed within the common experience of jurors, the Court holds that no expert testimony is necessary and therefore **grants** the motion.

***STANDARDS OF LAW***

The Eleventh Circuit Court recently summarized the standards applicable to the evaluation of proffered expert testimony, following the seminal case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). In *Rink v. Cheminova, Inc.*, 400 F. 3d 1286, 1291-2 (11th Cir. 2005), the Court stated:

> The admission of expert evidence is governed by Federal Rule of Evidence 702[1], as explained by *Daubert* and its progeny. Under Rule 702 and *Daubert*, district courts must act as "gatekeepers" which admit expert testimony only if it is both reliable and relevant. See *Daubert*, 509 U.S. at 589, 113 S.Ct. at 2795. District courts are charged with this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury" under the mantle of reliability that accompanies the appellation "expert testimony." *McCorvey*, 298 F.3d at 1256. To fulfil their obligation under *Daubert,* district courts must engage in a rigorous inquiry to determine whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; 2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562 (11th Cir.1998) (footnote omitted). The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence. See *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir.1999).
>
> In ascertaining reliability under the second *Daubert* prong, we have identified several factors which can be considered: (1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; (4) whether the technique is generally accepted by the scientific community. *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341. This list of factors, however, "do[es] not exhaust the universe of considerations that may bear on ... reliability." *Id.; see also Kumho Tire Co.*, 526 U.S. at 150, 119 S.Ct. at 1175 ("*Daubert* makes clear that the factors it mentions do not constitute a 'definitive checklist or test.' ") (citation omitted); *Daubert*, 509 U.S. at 594, 113 S.Ct. at 2797 (noting that the Rule 702 inquiry is "a flexible one"). District

---

[1]Rule 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

> courts "have substantial discretion in deciding how to test an expert's reliability ...." *United States v. Majors*, 196 F.3d 1206, 1215 (11th Cir.1999) (internal citation omitted).

400 F.3d 1286, 1291 to 1292.

## *ANALYSIS*

The first prong of the analysis is whether the proffered expert is qualified to testify competently regarding the matter at issue – here, whether a raised baseplate at the foot of the railing was unreasonably dangerous. In assessing qualifications, Rule 702, FRE provides that a witness may be qualified as an expert " by knowledge, skill, experience, training, or education."

*Education*   Defendant argues that Mr. Bogert is not qualified by virtue of education in that he was awarded a Bachelor of Science in agricultural education and a vocational teaching certificate, but is not an engineer or architect, has no education regarding design or construction of public access buildings, and has no advanced degree in any field. While true, the lack of a particular degree or any advanced degree is not, in itself, dispositive, as one may qualify as an expert by virtue of practical experience or other training. Here, Mr. Bogert holds numerous designations as a Certified Safety Professional, Registered Safety Director, Certified Safety and Security Director, and others, as listed on his curriculum vitae attached to his report. Mr. Bogert's lack of a doctorate does not disqualify him *per se.*

### *Practical Experience*

Defendant contends that Mr. Bogert is not qualified by virtue of his practical experience, detailed in the lengthy curriculum vitae. Despite extensive experience as a safety consultant, Defendant contends that Mr. Bogert is not qualified to opine as to whether or not the baseplate was an unreasonable hazard in that he is not an engineer or architect and "has never designed [or

constructed] a theme park attraction." The Court is unpersuaded. The issue is whether the baseplate was safe *as it existed on the date of the injury,* which necessarily occurred after design and construction. Defendant cites no authority for its implicit contention that only engineers and architects are qualified to opine on safety.

Defendant fares better with its contention that Mr. Bogert is not qualified to interpret the numerous state and federal building codes, regulations, and "safety texts" he cites to in his report. The report quotes from a variety of private and public standards and regulations, some clearly inapplicable to the issue at bar,[2] and some so general as to be meaningless.[3] For their part, Plaintiffs, in their response, argue that "Mr. Bogert obviously does not intend to comment and/or discuss the actual Building Code/regulations, but rather Defendant, Walt Disney's [sic], failure to abide by same." (Response at 3). The Court finds this to be a distinction without a difference. Mr. Bogert is not an official charged with interpretation of these codes (such as a city's building inspector or code enforcement official), and interpretation of a state or federal regulation is a legal conclusion for the Court in any event. Most importantly, it appears to the Court that Mr. Bogert is simply listing a variety of general regulations to support what he calls "good safety wisdom" regarding a common sense principle–that a walkway should be unobstructed. Thus, even assuming Mr. Bogert were qualified to discuss and interpret these standards and regulations, the methodology he uses to reach this conclusion is properly challenged by Defendant.

---

[2] The report refers at length to the Federal Americans with Disabilities Act standards and regulations, none of which appear to apply to this dispute. There is no allegation that Mrs. Abramson was disabled, or that the attraction did not comply with ADA regulations, or that the failure of Disney to comply with ADA regulations caused her alleged injury.

[3] For example, Mr. Bogert cites to the Insurance Institute of America's 1980 Accident Prevention text, which states that "a Business can be found liable for injuries from the moment a person enters the property, and especially if the injuries result from any hazardous condition which could have been eliminated."

*Methodology*

Defendant contends that Mr. Bogert's methodology is unreliable under *Daubert,* as he has not subjected his report and theories to peer review or publication. This, of course, raises the question of just what methodology was used to support Mr. Bogert's opinions that the baseplate was an unreasonable hazard. It appears from the report that Mr. Bogert's opinion is based, as discussed above, on his review of numerous codes and regulations (which may or may not be applicable to this facility) which, in turn, speak in general terms of the desirability of unobstructed walkways. From this principle, Mr. Bogert makes the conclusion that, as the mounting plate was elevated and protruded, it was therefore an obstruction and thus, unsafe. The difficulty in performing a *Daubert* analysis on this theory is that it was not arrived at by use of any "technique" capable of being evaluated in the scientific community. Mr. Bogert did not apply any particular methodology to arrive at the opinion, he merely looked at the facility, noted the elevation and concluded that it protruded into the walkway, and was therefore necessarily an obstruction, which is *per se* unsafe. Thus, there is no "theory" to evaluate, unless it is the underlying assumption that anything that protrudes into an accessway is an obstruction and all obstructions are unsafe. This theory has not been published or subjected to peer review and is too general a statement to be deemed reliable, in any event. This brings us to the main defect in the proffered testimony – namely, the need for such testimony at all.

### *Assisting the Trier of Fact*

The final prong of the analysis is whether or not the expert testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or determine a fact in issue. This circuit follows the generally accepted rule that "[e]xpert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves." *Hibiscus Associates Ltd. v. Board of Trustees of Policemen and Firemen Retirement System of City of Detroit*, 50 F.3d 908, 917 (11th Cir. 1995), citing *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962) and *Evans v. Mathis Funeral Home, Inc.*, 996 F.2d 266 (11th Cir.1993). Here, the testimony Mr. Bogert wishes to offer is not "the kind that enlightens and informs lay persons without expertise in a specialized field." *United States v. Burchfield,* 719 F. 2d 356, 357 (11th Cir. 1983).

As this district has recently noted, "It is well-established under Florida law that "[s]ome conditions are simply so open and obvious, so common and so ordinarily innocuous, that they can be held as a matter of law to not constitute a hidden dangerous condition." *Potash v. Orange County Lake Country Club, Inc,* 2005 WL 1073926 (M.D. Fla. 2005), *citing Circle K Convenience Stores Inc. v. Ferguson,* 556 So.2d 1207, 1208 (Fla. 5th DCA 1990). In the expert witness context, other courts have found expert testimony as to these commonly known and observable matters to be unnecessary. *See Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986) ("Dr. Snydor's testimony that the higher, nearer section of the curb hid the displaced, further section from the sight of one outside the parcel post door could have been of scant help to the jury. The jurors had an opportunity to observe that for themselves when taken to the scene, and they could see it in the photographs which were in evidence. The statistical evidence introduced through Dr. Snydor that persons wearing heels

tend to avoid walking on grates was of no greater help. As to both matters, the witness was simply repeating what is common knowledge and common sense. That would lead to the conclusion that the admission of such testimony was erroneous under Rule 702, but the error was clearly harmless.") *Andrews v. Metro North Commuter R. Co.*, 882 F.2d 705, 708 (2d Cir.1989) (remanding case, noting: "Starting with his comments about the condition of the railroad platform from which Andrews allegedly fell, Shanok was permitted to testify repeatedly about matters that were neither scientific nor in any way beyond the jury's ken. No one, other than Andrews himself, testified as to the condition of the railroad platform on January 18, 1985. Andrews testified that the station was dirty, filthy and kind of icy, that the platform had trash and ice on it and that the lighting was very dim. The jury needed no special training or expertise to decide whether the platform thus was a "safe place"; yet, over the objection of defense counsel, Shanok was permitted to testify that it was not."); *Alzubaidi v. Wal-Mart Stores, Inc.*,1991 WL 99423, *1 (E.D. La.) ("When the matter to be determined is within the common knowledge of the jury and the ordinary experience will render a jury competent to decide the issue, as in the typical "slip and fall in a store" case, then expert testimony should not be admitted."(internal citations omitted).)

The matters sought to be testified to here are similarly well within the jury's ken. Mr. Bogert's testimony does not pass the *Daubert* test and should therefore be disallowed.[4] The motion to strike is **granted.**

**DONE** and **ORDERED** in Orlando, Florida on May 27, 2005.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

[4] The Court is unpersuaded by the scant and conclusory arguments presented in Plaintiffs' response papers. Moreover, the fact that Mr. Bogert has been accepted as an expert witness in state court in other matters is not binding or dispositive here. The Court evaluates Mr. Bogert's qualifications and proffered testimony solely in the context of the issues presented in this case. He may likely be well-qualified to opine to other issues not relevant here.